Morning Dick. Good morning. Good morning. We will not be able to see Judge Nygaard. That is, Judge Ambrose and I will not be able to see Judge Nygaard. So Judge Nygaard, when you have a question I think both of us are on audio now, isn't it? No, I think we have video now. We have video. But if and when you want to chime in or say something, do so without hesitation. We won't be able to see you waving your hand. We'll just be able to hear you. Our first order of business today is my honor to move the admission of my law clerks to the bar of this court. And I would ask them to come forward. Luke McLaughlin, Ann Fleming, and Nolan Reichel. I have filed the necessary paperwork to sponsor them. And if they would stand right in front of the podium so Judge Nygaard can also see them. No, right there at the microphone. That's fine, Nolan. Thank you. And I have attested to the fact that each of them possesses necessary qualifications and that their private and professional character is good, at least as far as I've been able to observe. Luke had clerked for Judge Sand in New York after graduating from NYU Law School. Ann had clerked for Judge Miriam Cederbaum in New York after going to Harvard Law School. And Nolan has the distinction of having been the sidekick of one Governor Rendell before he was Governor Rendell. Nolan worked with my husband during his campaign. And then he, unlike some of us, went off to do something productive with his life for three years and went to Stanford Law School. So I hereby move their admission and ask my colleagues if they would agree to that. Absolutely. All right. All right, thank you very much. And we will ask the clerk to administer the oath. Please raise your right hand. Do you solemnly swear or affirm that you will remain yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States, as it stands, one nation, under God, indivisible, with liberty and justice for all. Congratulations and welcome. Thank you. All right. We will call the first case, Victoria Company v. Tiemann. Thank you. If you could speak up a little bit or pull the microphone up a little, thank you. That's better, thank you. Initially, I would request a few minutes of my time to reserve for rebuttal. That's granted. As the court is aware, in addition to the issues on the merits, there's a jurisdictional issue here. I'm prepared to address that, although I believe that that's been thoroughly briefed. If the court wants further argument on that, I'm prepared to do that. Well, you use your time as you see fit. It is an important issue. It wasn't raised in the blue brief, but obviously you addressed it in your reply. You do, as you wish. I guess you should outline, though. It would be helpful if you could give us at least how you deal with Carson and some of the other cases. This is an appeal, as we've made clear in the files, under 1292A1. It is not an appeal under any other rule or statute. It is an appeal from a de facto refusal to grant an injunction by the lower court. Although the judge never entered a border on the preliminary injunction. That is correct. He entered a border in his mind, and I think it's clear not only on the 12B6 motion, but the effect of that is to preclude my client from raising the sole issue that it raised on the preliminary injunction, which was the enforceability of its restrictive covenant. All the counts, all the claims involving the restrictive covenant, have been disposed of by Judge Dalzell in his 12B6 order. There is no other claim that we made seeking preliminary relief. The trade secret claim, though, the count in the complaint, did ask for injunctive relief, did it not? The Act, the Pennsylvania Trade Secrets Act, does provide for the potential of injunctive relief. Our count 4 of the complaint, to the extent it sought the potential of injunctive relief, sought, I think it's very specific, to prevent the use or disclosure of the trade secrets. It did not seek to prevent Mr. Teemy from going to work for a competitor. That's a wholly different type of relief than we could get under the restrictive covenant. Are you saying you didn't move for an injunction on the trade secrets claim? That's exactly right, Your Honor. I think if you look at our motion, it's very clear that our motion for injunctive relief was based solely upon the restrictive covenant, not upon any other claim. Why was that, by the way? Just out of curiosity. Well, I think, again, on a number of these, that is the basis upon which courts do grant injunctive relief. To get an injunction under a trade secrets claim is an extremely rare event. The cases that provide for that kind of relief are extreme on their facts. Air Products v. Johnson probably being the most well-known in Pennsylvania, this is not a case like that. It's not a case like the two that are cited by the injunctions. But an injunction was entered in Air Products, right? Yes, it was, in an extreme case where the court found, and my office happened to be involved in that case representing Air Products, so I remember that very well. The court found that this high executive at Air Products, though he had no restrictive covenant, was possessed of certain information that if he went to the competitor, he could pursue their instated intent, which was to start a new line of business. That's what he knew, that he was going to go there and start this line of business. But without a non-compete, that's probably what you'd want to do. You really want him to stop working for Tyco. That's exactly right. That's why we have a non-compete. That's why we didn't pursue. If we didn't have a non-compete, I guess what we would have had if we wanted to stop him was a trade secrets claim. But a trade secrets claim, in this case, is extremely weak. We made that judgment. We didn't pursue it. And for that reason, I think that the 1292A1 principles of irreparable continuing harm, and the only way to get this matter back on track is with this expedient appeal of the pursuit. Let's move on to Carson for a second. If Carson says that you have to have, in order to have an appeal at this stage to protest, you have to have serious consequences, and the immediate appeal must be the only means of effective challenge. Here, your non-compete provision has what I call a tolling provision. That is that the 12 months starts, assuming that it works for someone else, it starts once you get, among other things, a court order saying that thou shalt not do. That's correct. There's a tolling provision. So you can, if you win, you will get the full 12 months no matter what. That issue, Your Honor, certainly goes to a question that some of these cases end up being moved. If the restricted period ends. But that point does not go to the question of the continuing irreparable harm. Every day that Joseph Tiemann is out there working for a competitor, selling against my client, the harm continues. It's cumulative, and to the extent that he's dealing with other salespeople, maybe that's connected. It continues, and the fact that we may ultimately get the relief that we're seeking, which is to prevent him from working, doesn't mean that every day that goes by we're not suffering harm. How long has he been working at Tyco? About six months since we filed our complaint early this year. Actually, it was probably December that they filed it in Ohio. So every day that goes by. So the fact that there's a tolling provision, I don't think, Your Honor, with all the respect that goes to the issue of the irreparable continuing harm that Carson talks about. All right. Well, why don't you get to the merits? Why don't you talk about why Judge DelSalle got it wrong? Yes, Your Honor, I'm pleased to do so. We believe the district court committed reversible error when it dismissed the tolling's claims based upon Mr. Tiemann's covenant not to compete without a hearing or giving us the opportunity to present any evidence in support of our claims. Regardless of whether we apply the plausibility standard recently enunciated in the Darlenka case or the no possible facts scenario that we've been dealing with up until this point, it's clear that my client, McDonnell, in his complaint, stated sufficient facts to state a claim upon which relief can be granted. Is the reasonableness of the scope and the length and the duration of something like this a matter for the judge or the jury? Well, it's a matter for the fact finder, and that involves finding facts. This is a 12D6 motion, and the facts are not found. If you look at Judge DelSalle's order, he doesn't find facts. Let's say that there's a geographic restriction, and Pennsylvania law says that what you have in the case is invalid. That's a matter of law. No, Your Honor, I don't believe so. I think this is a question of reasonableness on a case-by-case basis. It involves the finding of facts. But if you have a Pennsylvania case that says normally a geographic restriction that it covers the United States, I'm not saying there isn't such a case, but if there is such a case that says a restriction on competing within the geographic of the United States is too broad, except in a rare circumstance, and could a court then not say that a geographic restriction on competing within the geographic United States or within the United States is invalid as a matter of law? There's no fact that's needed. Well, I think you'd have a very peculiar case. You'd have to have the very same agreement, the very same industry, the very same type of employee competition involved. This is a very facts-specific area, Your Honor. Nationwide covenants, which let me segue to that. That's exactly what we saw here. Judge DelZell somehow turned this into a request for an international, global, worldwide restriction. Our heavy filing that we made here talked about seeking to enforce this restriction on a nationwide basis. Maybe we're starting down the wrong path, I said geographic. Let's start off with duration.  That's correct, Your Honor. And I know in my state there were some cases that say challenge or non-competes beyond two years are invalid. But here's in Pennsylvania, one year probably is fine. There are cases all over the map on that. Absolutely. And so then let's go to the geographic. I thought what you were going to say to me in answer to my previous question is that products of Italic are sold worldwide, that you were agreeing that the limitation here would be with the United States, but are the products sold worldwide? We do sell products worldwide. Certain products we sell worldwide, some other products we don't. The notion of a worldwide business is something that I do want to talk about just for a second to the extent that Judge DelZell went outside the record, went to our website, which essentially is a marketing tool, found that we have five different product types and that we do sell, to use the term, worldwide. What does that mean? That was a venture outside the record, totally unannounced. The last section of Rule 12B, when it talks about converting 12B motions to Rule 56 motions, talks about the concept that if something is brought outside the record, the parties have a chance to respond. Essentially, that's what Judge DelZell did here. He pulled something out of the record without us even having a chance to challenge that. Now, he somehow says that whatever is on our website is gospel. Well, the extent to which we compete outside the United States is something that I think we could describe, challenge, and certainly we should have the opportunity to say. Are the fire distribution products that Mr. Tienen was involved with, are they sold outside the United States? They are sold in some countries. But to say it is worldwide, implying that there's no place in the world where our products aren't sold, is extreme. We weren't seeking to prevent him from working outside the United States. Although the contract doesn't say that. The contract is not clear on that. The appellee now says this contract is not ambiguous. And couldn't the court have stricken, I mean, there's severability provision in the contract. The court could have stricken 4B or whatever and still preserved the agreement not to work for a competitor, which seems fairly clear. Judge DelZell refused to do what virtually every other judge that I've ever seen in these cases do, including judges in the Eastern District, the Middle District, which is the blue line. Was that raised? Did you ask for it? Did you ask for that? We didn't ask for it in our complaint. But you didn't have an opportunity. We didn't have an opportunity. Well, you could have, in response to the motion to dismiss, offered that alternative. Is that evidence? We're not presenting evidence. It's a 12B6 motion. We certainly have gone to a hearing. Well, but this was attached to the complaint, wasn't it? The agreement? The agreement was attached to the complaint. So you could have responded to the motion by seeking reformation. Oftentimes what one would see in a complaint is that to the extent that something is deemed to be violative of Pennsylvania law, we would ask the court to reform the contract to conform with Pennsylvania law, i.e. blue pencil. But that's exactly what the agreement says. We're looking to enforce the agreement. That's what the agreement says. I guess if you bring this to the court's attention in your response to the motion to dismiss, that's the question. We could find that out. No, we did not. The judge, as I believe the court understands, asked us to distinguish a case which he calls Fresco, which is a decision that Judge DelZell entered, voiding completely a restrictive covenant. We did that. He didn't indicate to us that there was any question of whether or not he should or couldn't blue pencil this agreement. The Fresco case is significant to the extent that in that case Judge DelZell voided the entire agreement on the basis of a finding that the employer was attempting to oppress the employees. That's one of two ways under the Sitco case that a court can void a contract entirely. Judge DelZell didn't make a similar finding in this case, yet he voided the contract in its entirety. Okay, your red light is on. Judge Nygaard, did you have anything? No, thank you. Okay, thank you. We'll hear from you in rebuttal. Thank you. You may please the court. Ed Friedman representing Joseph T. and Tyco. There's no question that this court does not have jurisdiction of this interlocutory appeal under the doctrine announced by the Supreme Court in Carson. It is simply not possible for Victoria to make the threshold requirement that there be serious, perhaps irreparable consequences as a result of this ruling. Well, what's happening? He is working for Tyco for six months. He is doing something contrary to the agreement. And if we don't hear this case, he's going to work for Tyco for a whole year and then keep going until ultimately, perhaps, if it's reversed on the Supreme Court or somewhere. I mean, what's going to happen here? The reason that there is not the serious irreparable consequence is because count three, the Uniform Trade Secret Act count, still remains before the district court. And as Judge Randell, you pointed out in the questioning to Mr. Fochek, in the complaint... But don't we have to accept at this stage the pleadings which argue that there has been irreparable harm caused? No, because, Your Honor, there is a claim before the court, before the district court, of the Uniform Trade Secret Act claim that will give Vitalik, theoretically, substantially the same or identical relief that he was seeking on the non-compete claims. It will require him to not work for Tyco anymore? Yes, although we certainly don't believe that the facts in this case... I mean, that's quite a concession. ...would warrant it. Let me make sure I'm clear. While we don't believe that the facts in this case would warrant that type of an injunction, let alone a non-compete injunction, it is well established under Pennsylvania jurisprudence that a person can be enjoined from engaging in employment or from certain aspects of his employment without a non-compete, purely under the Uniform Trade Secret Act. And their products stand for that proposition. But that doesn't say... That doesn't work the other way around, and therefore that's the relief they're seeking. And the motion for preliminary injunction is limited to the contract, breach of contract. So that's what they moved to get from the court, and the court has thrown out the claims that relate to that motion. Your Honor, they... beginning of the record at page A80. And replete in their brief in support of preliminary injunction, they request trade secret injunction. First paragraph. As a result of the breach of the non-competition. That's right. However... I don't want to argue with you. If you go further to page 12 of that brief, which is at A91 in the record, it clearly indicates that under the heading of public interest, the public interest would clearly be served by granting the preliminary injunction. The public interest is certainly furthered by protecting a company's trade secrets and customer relations. They go on. In fact, Pennsylvania has adopted the Uniform Trade Secrets Act to protect the disclosures of such important information. And then on page 13, A92 of the record, they say for all these reasons, the motion for preliminary injunction should be granted. So clearly on page 12, they requested an injunction for the protection of their trade secrets. But the motion for the PI, are they requesting an injunction on the disclosure of trade secrets? I believe that we have to read the motion with the brief. And I think together we see the relief they requested. However, let's just assume for the moment that they did not seek an injunction to protect their trade secrets. They are still precluded from making the finding, as required by Carson, that there is serious irreparable harm because they do theoretically have a remedy available at the district court, which they did not avail themselves, which under Pennsylvania law would provide substantially similar relief. Is that the test for irreparable harm? The fact that, I mean, isn't irreparable harm a finding based upon what is occurring as time goes by as compared to you'll be irreparably harmed? You won't be irreparably harmed because there's some other legal action you could take. It is well established in the Third Circuit, U.S. v. Wade, where this court was presented with a situation where part of the defendants in a sort of clean-up action were dismissed and an interlocutory appeal was taken and the court found that because there was still injunctive relief available at the district court with the remaining claims and defendants, they did not make the necessary standing for an interlocutory appeal. But even in that case it talked about the practical effects of denying injunctive relief, and we have a practical effect here. And you add on to that what was stated actually in the contract where Mr. Tima says, I further acknowledge that the restrictions set forth in this section, the one dealing with the non-compete, are reasonable and necessary in order to protect the legitimate interests of the client. That recitation is there, but notwithstanding the fact that there are still remedies available at the district court that will get them substantially the same relief prevents them making it into the first element. Well, I think it's interesting that you're conceding that it's the same relief, i.e. he will not be able to continue working for Tyco. I did not see that anywhere, and I'm surprised that you would say that. I'm conceding that theoretically that cause of action exists, but I do not believe that they have the quantum of evidence to support it. Let me quote a passage from the Second Circuit's opinion that's been quoted by both parties here in the Buffalo Bill case, and I think it says it precisely. It was also a case where an interlocutory appeal was taken into this context. In the Second Circuit said, a learner need not now decide the question. We have little doubt that upon these allegations, plaintiffs will not succeed in establishing a right to the most drastic remedy they request. The question of the propriety of the remedies prayed for by the plaintiffs, however, is not the issue on this appeal. The question here is whether plaintiffs might conceivably have some remedy, whether or not suggested by them, and on the face of this complaint, we cannot say to a certainty that they will not be able to make out a case for at least part of the equitable relief they request. That's the how good is the merits. That quote talks about the merits. No, this one is from Bill v. Buffalo, and that applies to this case. Is that case cited in your brief? Yes, Your Honor. It's the Bill v. Buffalo 441F2D284. The quote comes from page 288. Where is it in your brief? Oh, I'm sorry. I believe it was actually cited by the other side. Well, that, to my mind, addressed the merits. Why don't we go to the merits? I think we end up... In the merits of this case, the judge did not commit. Here. What he did was exactly what is called for in this situation, and that is he read the non-compete, which was part of the complaint. In fact, the complaint recites verbatim the provisions in the non-compete. He read it, giving plain, ordinary meaning to the language on the page, and in so doing, determined that the agreement was unreasonably overbroad and that when looking at the factual allegations in the complaint, that they could not sustain a global non-compete in five product lines, where at most the factual allegations in the complaint were that Jotinin worked in predominantly three states, in one product line, and perhaps had some contact with customers throughout the United States. But doesn't... So you're saying that the allegations in the complaint were sufficient for him to make this determination? It was insufficient to uphold the non-compete that Victaulin was seeking to enforce. But doesn't the court have to consider the context? I mean, a non-compete for Bill Gates is different from a non-compete for someone else. Don't you have to consider the reasonableness as a matter of... as part of a factual determination? What does that person do? What is the need? And isn't there a case law that says you have to look at the need of the interests of the company versus the type of... what they're trying to protect? Isn't that essentially a factual inquiry that really can't be accomplished on a motion to dismiss? No, Your Honor, and here's why. Remember, what we're talking about is a 12B6 motion here. And as the United Supreme Court two months ago said in Twombly, there has to be enough information in the complaint to raise a reasonable expectation that discovery will reveal evidence to support the alleged claims. Even under the old Connolly standard, where you have to say that it appears beyond a doubt that they can prove no set of facts, what the district court did was properly read the agreement, and the agreement calls for a international multi-line non-compete. And that's very clear from the language. You then look to the complaint to find any factual allegations which would support a global multi-line non-compete, and the complaint was devoid of any factual allegations. Moreover, there was no reasonable expectation that... But in this case, there is a non-compete that the judge found, in effect, had gratuitous overgrowth. There also is in Pennsylvania, which is the law applicable here, that says that the courts can blue-pencil, if you will. Is there a requirement under Pennsylvania law that someone must have requested a blue-pencil, or is it enough that it be in the contract itself? I believe it was incumbent upon me to ask for it, and let me also state that in the contract itself... Let me now look at paragraph 8 in the agreement. Page 3. Why isn't that enough? In the event that any deterrents or conditions are found by a court to violate or contravene applicable laws, etc. They are severable. They are severable. And such provisions that constitute a violation of the law, regulations, or public policy shall be deemed not a part of the agreement, and the balance of the agreement shall remain in full force in effect. That's entirely different than what they're asking. They're asking for reformation. What they're asking for, and importantly, what they're asking this Court of Appeals to do, but what they now ask the district court to do, is to go into their agreement and rewrite it, not sever out what's offensive. So what you're saying is that 4B, for example, which is the time, geographic, and product line, non-compete. If that provision is invalid as a matter of Pennsylvania law, then there isn't anything to sever, is what you're saying. Or once you sever what is offensive, there's nothing left in 4B. Likewise, nothing left in 4C, and nothing left in 4D. And that's the provisions they have in their contract. Importantly, they never requested in their complaint, they never requested when the judge sent his order with regard to explain the Fresco case's applicability here. They never asked for reformation. Likewise, when the court ruled on the 12B6 motion, they never filed a motion for reconsideration. In fact, they had all along been arguing that they would want a nationwide non-compete. They didn't ask for leave to amend, to modify, and seek reformation of the contract. So we're sitting here... What case law says they had to do that, and they're foreclosed if they don't. I don't think that they are foreclosed. I think that they have prematurely filed this appeal, and what they ought to have done was to go back to the district court and either file a motion for reconsideration... If you were in that position, that's a tough one. You'd like to put a rock in their eyes. If they don't file the appeal very quickly, and they wait up later on, you then say to them, see, there was never a need for an injunction to begin with. We're entering into a world of hypothetical what-ifs because the district court was never asked to rule on reformation. And all he did was interpret the agreement and look at the complaint, and he effectively... My question to you is, under Pennsylvania law, must there be a request for a judge to rule the pencil, or is it just a matter of discretion? I believe it is solely within the discretion of the court as to whether or not to reform an agreement that is overly broad, and I believe that the Pennsylvania Supreme Court... I thought, just to make sure we understand, I thought the Pennsylvania Supreme Court said unless there is gratuitous over-breath, we will blue-pencil. What I don't know is if there's a tag to that, we will blue-pencil if asked. I'm not sure if the courts have ever said it that definitively. However, I think that the Redding Aviation, as well as the Sitco case, do stand for the proposition that it is within the discretion of the court to modify an overly broad covenant not to compete. I do believe it is incumbent upon Victaulic to ask for that relief before they take an interlocutory appeal, to give the judge the opportunity to decide whether or not this is the appropriate case for reformation, and I do believe that in the Pennsylvania jurisprudence that if there is gratuitous over-broadness, and if at the time the agreement was written, it could have been written with reasonable restrictions, and at the time they sought the relief, they sought reasonable restrictions, which pretty clearly there. A court has a discretion not to modify or blue-pencil, but it is led to the discretion of the court, and we should not be here on an interlocutory appeal trying to guess or hypothesize what the district court would have done had he been asked to do so. But didn't the court, in dismissing the claim, neglect to look at the agreement in toto because the agreement contained an agreement of the parties that to the effect that if there were a provision that would be violative of law, that that would be severed, that it would affect B reform. So didn't the court, in throwing out the claims based upon this contract, fail to really look at the entire contract? To the contrary. He did exactly what the contract asked for, which is sever what is offensive, what does not comply or comport with Pennsylvania law, and what is left. He didn't do that. Where in his opinion did he do that? I believe that when he ruled as to the overbreadthness of B, C, and D, there was nothing left in there for him to enforce. Enforce C. You're saying that under C... I'm saying he found that it was overbroad. But he didn't find that C was overbroad, specifically. Did he? The provision that for 12 months he couldn't work for Tyco? No, the 12 months was never in dispute. So you're left with, I agree, for 12 months. Not to work for Tyco. No, because when you take out, I will not, within any geographic region in which Victaulic products are sold, that's global, I will not, within any geographic region in which Victaulic products are sold, engage either directly or indirectly in the sale as an employee, consultant, or independent contractor for or on behalf of the following businesses, Tyco. But the previous clauses are what's important because it defines where he is not allowed to work for them, which is worldwide, and as to all of the products that are in five different industry types. I'll read it again, but I did not read Judge DelZell as making that specific determination. I will not, within any geographic region in which Victaulic products are sold, which includes continental U.S., Canada, Mexico, work for, as an employee for these... Right, and if you take out the offensive provisions, it says I will not work for 12 months for Tyco. Once again, you're left with the same result, which is worldwide. That is the problem, is the way this is written, it requires it to be reformed. But in this day and age, don't there have to be factual considerations of whether a global restriction is necessary? I mean, we're not in 1940 when everybody had to travel to sell their products to Maryland or Delaware or whatever. Worldwide these days, depending upon what's going on, could be very necessary for the employer's protection. And also, isn't the function of the time and scope... I mean, maybe it's worldwide for three months. These things interact. Shouldn't the court have had facts before it regarding the need for this restriction, which under Pennsylvania case law is one of the important elements as to the reasonableness? Well, you are correct with all of those assumptions, Judge. In this case, he could only look to the complaint. And that's what Twombly, that's what the United Supreme Court has directed. Look to the complaint, and there were no factual allegations contained in the complaint that would support an international non-compete.  That's really... There's also nothing in the complaint that says that it's absolutely impossible for this to be reasonable. Is there? In the complaint, they ask for and incorporate the full scope of the restrictions in the non-compete. At no point in time do they ever say, as Judge Ambrose alluded to in the questions of Mr. Fochek, in the alternative, if any of the provisions are overly broad, we seek that it be reformed and modified to comport with Pennsylvania law. Instead, they sought the full measure, the full extent of the restrictions in the non-compete. And when you give it its plain, ordinary meaning, it was international, and there were no facts in the complaint to support that. Thank you. We'll hear from Mr. Fochek in rebuttal. Indeed, we were locked in a hard place, and that's why we are here. There really isn't one way of getting the expedited treatment and relief that my client is entitled to. Does anything under Pennsylvania, in any case, like Sitko, say that you have to, root pencil, absent, gratuitous overbreadth? Does Sitko say that? There's no requirement. There's also no requirement that it be asked for. Courts, time and again, deal with this at the time of the case. That's sort of the next question. If there isn't, we have a situation in which there hasn't been a request to root pencil. So if a court finds that something's overbroad, but does not make a finding of gratuitous overbreadth, must the court in Pennsylvania root pencil? That is, I think, a matter within the sound discretion of the court. So this court then used its discretion not to root pencil. Upon a factual finding outside the record that's not supported any place in the pleadings. This is dangerous. This is dangerous. Although your point is good theoretically, but geez, if you look at your website, I would assume that what's on the website is all true, right? To the point I was trying to make before, Your Honor, what does worldwide mean? We don't use that term anywhere in the pleadings. We've not called this out as an agreement that would restrict him. But it's clear that you saw it at least in the United States, Canada, and Mexico. That's clear. But to the point made by Mr. Freeman, this agreement is severable. There's no question about it. It's on internalized terms. 4B has nothing to do with anything outside a seven-state area. Yeah, but his point is that if 4B is declared invalid, what is there to sever? On what basis? Could it be declared invalid? If 4B, 4C, and 4D are declared invalid, that takes the cuts out to non-competing. That's right. But you must do that, particularly on a 12B6 status. Third, you're going carefully. This is, you know, we did not have any opportunity to suggest that we should have come forth in our pleadings, in our complaint, and say here's what our agreement is. We want to enforce our agreement. But, by the way, we think this agreement is kind of, you know, overbroad and we want to restrict it. That's not how these matters are played. You plead the agreement. We're seeking relief under the contract at a certain point that the facts that are developed don't support the breadth of the agreement. It's certainly incumbent upon the parties and, in fact, the court to reach some compromise. But in the cases, because you say you normally would not do that because it's obviously a conceded weakness at the get-go, but how would one get before a court that, wink, wink, it's okay to blue pencil in order to get us out of Dodge with a semi-victory? In my experience, it happens during the course of the testimony. It happens during the course of argument. You know, we're at the pleading stage here. We have a contract that we believe, when we file a complaint, is enforceable. So you didn't have a hearing. You filed an answer saying it should not be dismissed and it went no further. That's exactly right. This is up to 12B6. All the pleadings and Judge Dalziel didn't hear God. He went outside the record. We didn't have a chance to explain. He shifted the burden. The clear burden in Pennsylvania is on the employee to show the unreasonableness of restrictions. That burden got lost in this. Did he go outside the record other than looking at the website? No, he didn't. That's the sole basis for his conclusion that this is a worldwide restriction and hence, ipso facto, it's overbroad. Without any notion of what the facts truly are in this case, what Mr. Tienan is doing, what he's capable of doing, what his knowledge is, where he operated. He's not able to take judicial notice that the website says X. Well, judicial notice requires some finding that the authority is authoritative. Going to websites and concluding that there's some kind of beyond reproach, which is what is necessary for courts to take judicial notice, I think is an extreme precedent. I've never seen it. I think it's dangerous. All right. Judge Nygaard? I have no questions. Thank you. All right. Thank you, counsel. The case is well argued. We've taken our advisement. We'll call our next case, United States v. Otero.